In The United States District Court

For The Southern District of West Virginia

Beckley Divison

| | |
|---|---|
| Roland Mathis, | ) |
|      Plaintiff's, | ) |
| | ) |
| vs. | ) Civil Action No. ~~5:18-01111~~ 5:19-cv-00615 |
| | ) |
| D.L Young, Warden | ) |
| Officer T. Sweeny | ) |
| Officer J. Swager | ) |
| Secretary J. Perry, | ) |
|      Defendants, | ) |

Comes now, Roland Mathis, plaintiff's, pro se, and respectfully moves this honorable court to motion to amend, Plaintiff requests leave to amend his complaint procedure Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure precedure provides that a party may <u>amend</u> his pleading, in all other cases, a party may amend its pleading only with the opposing part's written consent or the court's leave. The court should freely give leave when Justice so requires. Fed.R. Civ. P.15(a)(2). <u>The court finds that Plaintiff's complaint has not yet been served upon Defendants.</u> Under these circumstances, it is appropriate to grant Plaintiff's motion. See: <u>Sanders vs. United States</u>, 373U.SD.., 10L Ed 148,83 S. ct. 1068 (1963)



## Jurisdiction

Under this title and section 42 U.S.C.S.§ 1983, the constitutional court has the power and jurisdiction to review these acts. When a Plaintiff raises sufficient claims to demonstrate that his or her resulted from violations of The United States Constitution or laws of the United States. Upon such a showing, this court is provided the power to inquire. which a court must undertake in qualified immunity analysis with respect to Plaintiff's 4. 42 U.S.C.S.§ 1983 claim. Under bivens vs. six Unknown named agents of Federal Bureau of Narcoties, 403 U.S. 388, 91 s. ct. 1999, 29L. Ed 619 (1971).

## Case History

On November 29, 2018. Roland Mathis/Plaintiff's Filed a claim under 42 U.S.C.S.§ 1983 raiseing seventeen ground of Beckley Federal prison Officer violated his constitutional rights by the staff members, in which clude racially discriminatory towards the Plaintiff's, denied him medical care, writing false incident reports, used profane and abusive language towards him, use racist slurs towards him and blocking him out of court in violation of his due process, prevent him from filing adminstrative remedies and also retaliated against him by use of excessive force. Dislocating his shoulder and cause the Plaintiff to suffer from emotional distress.

## A Continuation of Retaliation and Emotional Distress

Ground eighteen: Depression is a illness, and it can have a profound effect on person's thoughts, feelings, behavior, and physical health. It often interferes with normal activities such as eating and sleeping, also impaired thinking or concentration.

2

<u>In the case at hand</u>, The Plaintiff experience fear and trouble making decisions, being unable to concentrate, having problems with his memoy and experience increase in pain, due to his "spine injury". Brcause of the Plaintiff's depression, he believes, contributes to other health problems because of the previous retaliation by member of Beckley prison staff and this was done intentionally, and this misconduct by staff is still "continued" to take place. The liability Rule stated in restatement of torts § 46(1)(1965) relating to intentional <u>"infliction of emotional"</u> distress, which states in relevant part that one who be <u>extreme</u> and outrageous conduct <u>intentionally</u> or <u>recklessly</u> causes severe emotional distress to another is subject to liability for such emotion distress. See: <u>Ford vs. Hutson</u>, 276 s.c. 157, 276 s.e. 2d 776, 778 (4th cir. 1981) Also see: <u>Andrews vs. Piedmont Air Lines</u>, 297, s.c. 367, 377 S.E. 2d 127, 129 (s.c. ct. app. 1989) States, the district court held that proven <u>"emotional distress"</u> constitutes <u>"actual damages"</u> under § 552 a(g)(4)(A) A plaintiff can produce evidence that emotional distress caused <u>chest pain</u> and <u>heart palpitations</u>, leading to medical and psychological tratment which included a formal diagnosis of major <u>"depressive disorder"</u>, as well as necessitated prescription medication. It is clear that sqme amount of compensatory dameages for <u>"emotional distress"</u> is warranted. See: <u>Williams vs Sanolman</u>, 187 F. ed 379, 381 (4th cir. 1999). Also see: <u>Carey vs Piphus</u>, 435 U.S. 247, 266, 55 L. Ed. 2d. 252, 98 S. ct. 1042 (1978)

The BIA Articuiated a five prong test indefining torture under the cat as an act causing severe <u>physical</u> or <u>mental</u> pain or suffering intentionally inflected for a proscribed purpose by or at the instigation of or with consent or acquiescence of a public Official

3

who has custody or physical control of the victim and not arising from lawful sactions. See: Oxygene vs. Lynch, 813 F.3d 591 (2015). See: 231 & N. Dee. At 296-99 Thus inrej-earticulate a <u>fine prong</u> test in defining torture under CAT. (1) An act causing severe physical or mental plain or suffering. (2) Intentionally inflected; (3) for a proscribed purpose. (4) By or at the instigation of or with the consent or acquiescence of a public Official who has "custody" or "physial control" of the victim, and (5) Not asising from lawful sanction. See: Kelly vs. ALA. Dept. of Revenue, 638 Fed. Appx. 884 (2016)

    In the case at hand. on Febuary 14, 2019. Roland Mathis herein Mathis/Plaintiff, was the target of a prolonged and sustained pattern of "harassment and intimidation" by corrections Officers on account of his § 42 US.C.S. § 1983. Against the BOP correction Officers. The Plaintiff complains of assult/excessive force was arising from two particular violent incident during that period. Emotional distress and violated his due-process. On Febuary 14, 2019 and June 20, 2019. Twice Officer instructed the Plaintiff to leave the cube and they proceeded to "ransacked" his cube both times intentionally by throwing every thing out his locker on the floor and both time it look like a "hurricane" or a "tornado" had been through his cube. Both time all of his 6,000 page or more "legal Documents" was throw in the floor, and dip/tobacco had been spit on the wal and this was intentionally done. The only Officer the Plaintiff's witness with tobacco/dip in his mouth was Officer T. Sweeney. The Staff have a right to search a inmate cube but it is abuse of discretion to ramshack a inmates cube. And leave everything in the floor. And this was racially motivated and retaliation in both ramshack. and other black inmate

cube was ransacked also. They did just that. This kind of inappropriate behavior take place all of the time; and both ransack Officer J. Swager, T. Sweeney and J. Perry was apart of the ransacking of cube and randomly for no reason. These act was done because of racism and as an act of retaliation against the Plaintiff. Obviously to cause "harm and emotional distress".

They were intentionally done invasive searches are not valid if they are performed to humiliate or barass a prisoner or to retaliate against a prisoner for angering a member of the prison staff inmate admission & orientation handbook; state, any staff member may search an inmate's cell at anytime to locate contraband or retrieve stolen property. The property and living area will be left in the "same condiction" found. See: Attchment A. These act cause him to experience "exmotional distress", "fear" and "chronic depression". Act (2) On June 17, 2019, a inmate name Anthany Cooper inmate No.# 12328-038 who is a African American inmate was assault by a administrative secretary Mr. J. Perry. Inmate Mr. Cooper was in the house unit around 12:30pm with a pick in his hair. Mr. Perry made a "racist comment" by telling inmate Mr. Cooper to take that pick out of your head you are not on your street corner or hood block. This was inappropriate behavior by Mr. J. Perry and this was said intentionally by Mr. Perry to cause harm and it was racially motivated. These comment got Mr. Cooper attention. He removed his pick and said to Mr. Perry that you made a "racist comment." The comment was intend for inmate Anthony Cooper to get upset. This act led to a "verbal altercation". No profane or abusive lanauage was used by inmate Cooper. Mr. J. Perry the unit secretary gave inmate Mr. Cooper order, by saying go down to the message center/Officer Station.

5

As Mr. Cooper turn around to obey Officer J. Perry order, Officer Perry "attacked" the inmate Cooper by <u>jumping on his back from behind and placing inmate Cooper in a illegal choke hold.</u> Inmate Cooper fell backward on Officer Perry and start cough and choking saying "<u>I can breath</u>" I can't breath the inmate couldn't <u>inhale or exhale.</u> Officer Perry "<u>continued</u>" to apply pressure until inmate Cooper was prostrate facedown on the floor. The Plaintiff and other inamte thought inmate Cooper was going to die. Mr. Perry did provoke this act, but inmate Cooper was not dead. When the other Officer arais they both put inmate Cooper in handcuff and they try to force inmate Cooper up on his feet by picking him up; but it took a min for inmate Cooper to come to. Inmate Cooper said, I need to catch my breath because Mr. Perry almost choked inmate Cooper to death. Officer had to wait a minute for inmate Cooper to refesh his self. <u>"This was racially motivated".</u>

<u>Note:</u> while prison official are afforded broad discretion in maintaining <u>order</u>, they are not justified in using <u>any</u> amount of force. When the treat of disorder. The test of reasonable force is whether the degree of force used is necessary under the facts and circumstances. See: <u>Facility vs. Rockerfeller</u> states deadly force as a means of self-defense is never justified unless the prison Official is in reasonable apprehnsion of <u>death</u> or <u>serious injury</u>, and the use of deadly force is a "<u>last resort</u>". It is obduracy and want onness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment's clause see: <u>Part 1 of Constitutional Rights of Prisoners;</u> in Graham, whether the substantive due process stand of the fourteenth amendment survived as as a source of a federal right to be free from excessive force, every person,

6

including an "incarcerated felon", has the right to be free from actual offensive bodily contact. Any person who violates either of these rights can be held <u>liable</u>, both civilly and criminally. A prison Officials are privileged to use force against prisoner in <u>five</u> situation. <u>These situation</u> are: (1) self-defense; (2) defense of third persons; (3) enforecement of prison rules and regulations; (4) prevention of escape; (5) prevention of crime. The factual elements in each case determine whether the force used was excessive, and thus not privileged. The controlling factual elements are the degree of force used by the inmate, the inmate possession or non possession of a deadly weapon.

    When dscussing the amount of force that is legally permissible it is helpful to distinguish <u>deadly force</u> and <u>non deadly force</u>. Deadly force, may be definded as force that will likely cause <u>death</u> or <u>serious bodily harm.</u> Knives and firearms are always considered instruments of deadly force. Non-deadly force is force that will normally cause neither death nor serious bodily harm. The employing certain methods of applying force cannot, in the abstract be categorized as either. The use of deadly or non-deadly force, certain factual element of the case, primarily the area of the body. must be considered.

<u>For example.</u> A blow to the head from a billy club is likely to cause death or serious bodily harm, and thus must be regarded as use of deadly force. <u>However,</u> a blow to the knees would probably constitute non-deadly force. See: <u>Spain vs. Procunier</u>, 600 F.2d 189, 193-194 (ca(. 1979). The right not be discriminated against based on one's race is susceptible pernicious in the adminstration of justice. See: <u>Rose vs. Mitchell</u>, 443 u.s. 545, 555, 61 L. Ed. 2d 739, 99 S. ct. 2993 (1979). Also see: <u>Hope vs. Pelzer</u>,

7

536 U.S. 730, 738, 153 L. Ed. (2d 666, 122, S. ct. 2508 (2002) asking whether prison officials displayed deliberate indifference to the inmate's health or safety.

A claim of intentional infliction of emotional distress requires conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of derency... and utterly in tolerable in a civilized community. See: Howell vs. New York Post CO., 81 N.Y. 2d 115, 612 N.E. 2d 699, 702, 596 (2014) also see: Smith-Tyler vs. Bank of AM., N.A, 992 F. supp. 2d 1277, 1282 (N.D. 6A. 2014). In smith under Georgia law, A claim of intentional infliction of emotional distress contains the following elements (1) The conduct must be intentional or reckless. (2) The conduct must be extreme and outrageous, (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe in order to be sufficiently extreme and outrageus; the conduct must go beyond all reasonable bound is of decency so as to be regarded as afrocious and utterly in tolerable in a civilized community see: United Parcell Service vs. Moore, 238 6A. App. 376, 377, 519 S.E. 2d 15 (1999)

In the case at hand. Plaintiff has experience inappropriate behavior from these Officer here at Beckley prison camp and this inappropriate behavior is racially motivated because he is a "Affrican American" and a inmate who has file a law suit against these Officers for there inapproriate behavior and violated his constitutional rights and has witness incident done to other Affrican American inmate of no reason other than they were black. Both retaliation that was done by these three Officers T. Sweeney, J. Swager, and J. Perry and other Officer ransacking his cube

8

at this prison camp was act of "retaliation" and was "racially motivated". The Officer is aware that the Plaintiff suffer from <u>two injury one</u> he need a <u>left shoulder replacement</u>, <u>two</u> he suffer from a <u>serious spinal injury</u> and do to these two injury. The Officer known after both time <u>on Fedruary 14, 2019</u> and <u>June 20, 2019.</u> The two dates his cube was "ransacked". He was unable to pick up his property because of these two "serious injury". This would take the Plaintiff some time <u>two</u> or <u>three</u> days to get his property off the floor and back into his locker.

    Also see: <u>Officer J. Perry</u> uses a "illegal choke" hold on a <u>black inmate</u> of no reason and see the officer strangle inmate Mr. Cooper and Mr. Cooper saying outloud "I can not breath" over and over and Officer J. Perry continue apply more presure. These Three acts by the prison administration and Officers was unbearable to the Plaintiff and did cause him to experience even more "chronic depression". And pain because ever time the Officer "ransacked" his cube he was in pain trying to pick up his property. Also that illegal coke hold on inmate Mr. Cooper was unconstitutional for a Officer to strangle a neither inmate and to stop the Plaintiff and other inmate from reporting this incident. The Staff lock the computer room from two weeks. The Trust Fund is the inmate computer network that provides inmate access to multiple services. At no time will a inmate have access to the internet. but Request to staff. This service allows inmate to correspond with staff electronically. The list of available department varies by institution, however, there is a standard DOJ sexual abuse reporting mailbox available on the computer that provides inmate with an additional method to report allegation of sexual abuse and harassment directly to the Warden and The Office of Inspector General. (O.I.G) Now

ever since the Plaintiff file of his 42 u.s.cs. 1983. and the illegal choke/strangle of inmate Cooper. No inmate here at this Beckley Prison Camp FPC. Camp can print a copies of his e-mail to the prison staff member like the Warden or camp Administrative or The Office of Inspector General (OIG) and the inmate can't print staff member respons to his complaint neither. This is a violation of the Plaintiff, and other inmates "due-process". Now the Plaintiff and other inmates can not show or produce any kind of document process took place. Through the computer system. Particular the solution and the result/reply. That's the purpose for the system. The Plaintiff prays that this court look into this constitutional violations. and apply his amendment to his 42. us.c.s. § 1983. claim.

Prepared and executed on AUGUST day of 19 2019

Respectfully Sumbitted

*Roland Mathis*

Roland Mathis
Pro se Plaintiff
Reg. No. 52752-019
FPC Beckley P.O. Box. 350
Beaver, WV 25813

Legal

◇52751-019◇
Roland Mathis
52751-019 FCI Beckley
Box 350 Federal Prison CAMP
Beaver, WV 25813
United States

◇52751-019◇
Southern District Court
110 Heber Street CUT OFF
Beckley, WV 25801
United States

UNITED STATES
POSTAL SERVICE®

1000

25801

U.S. POSTAGE PAID
FCM LG ENV
BEAVER, WV
25813
AUG 20, 19
AMOUNT
$0.00
R2304M115237-05



Legal



FEDERAL CORRECTIONAL INSTITUTION
BECKLEY
BEAVER, WV 25813

DATE 8·19·19

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS BEEN NEITHER OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.